# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICTOF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GARY LOBATON**, individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> **CARNIVAL CORPORATION**, a Corporation of the Republic of Panama; **CARNIVAL PLC**, a Corporation of The United Kingdom; **COSTA CROCIERE**, **S.p.A**, a Corporation of the Republic of Italy , and **JOHN DOES** 1-10, <br><br> Defendants. | Case No.: <br><br><br> **CLASS ACTION COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff, **GARY LOBATON**, individually and on behalf of all others similarly situated (hereinafter collectively "Plaintiffs"), by and thru his attorney **RIBBECK LAWCHARTERED**, makes the allegations in this Class Action against Defendants, CARNIVAL CORPORATION, a Corporation of the Republic of Panama; CARNIVAL PLC, a Corporation of The United Kingdom; COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy, and JOHN DOES 1-10, (hereinafter collectively "Carnival" or "Defendants").

## SUMMARY OF CLAIMS

1. This is a class action seeking relief for violation of the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea, breach of contract, negligence,

unjust enrichment and punitive damages for registered passengers, unregistered passengers and crew members who were on board of the cruise ship Costa Concordia of the coast of Italy, on or about January 13, 2012, who purchased a ticket or entered into an employment contract with the Defendants and who suffered damages as the result of the unsafe conditions exposed to by the negligent and/or intentional conduct of the Defendants.

2. Despite knowledge of the obvious damage to the Costa Concordia on January 13, 2012, the Defendants failed to properly and timely notify all Plaintiffs on board of the deadly and dangerous condition of the cruise ship as to avoid injury and death.

3. On January 13, 2012, despite of the dangerous conditions aboard the cruise ship, Plaintiffs were abandoned by the Captain of the Costa Concordia.

4. To date 16 bodies have been recovered and 16 more remain missing. There were more than 4,200 people aboard the Costa Concordia at all times relevant to this complaint.

5. This action is brought on behalf of Plaintiffs who were on board of the Costa Concordia on January 13, 2012 who purchased a ticket or entered into an employment agreement with Defendants who suffered damages as a result of Defendants' conduct.

## THE PARTIES

6. Plaintiff, GARY LOBATON, was a crew member on board of the Costa Concordia who, at all times relevant to the complaint, resided in Lima, Peru.

7. Plaintiff did not learn of the dangerous conditions of the cruise ship until it was too late for them to abandon ship on a safe and reasonable manner as to avoid causing Plaintiffs intentional infliction of emotional distress, injury and/or death.

8. As a consequence of Defendants' unlawful and unsafe conduct, Plaintiffs have suffered injuries and have otherwise been damaged as a result of Defendants' wrongful acts.

9. Plaintiff appears in this action on behalf of himself and on behalf of all others similarly situated.

10. Defendant, CARNIVAL CORPORATION, is a Corporation of the Republic of Panama; Defendant, CARNIVAL PLC, is a Corporation of The United Kingdom; COSTA CROCIERE, S.p.A, is a Corporation of the Republic of Italy. and JOHN DOES 1-10, (hereinafter collectively "Defendants"). Upon information and belief, Defendants are and were responsible for all of the events that lead to the injury and/or death of Plaintiffs.

11. Various others, presently unknown to Plaintiffs, participated as co-conspirators of the Defendants in violations of law alleged in this Complaint, and have engaged in conduct and made statements in furtherance thereof. The acts charged in this Complaint have been performed by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives, while actively engaged in the management of each Defendants' business or affairs. These others shall be referred to herein as the "John Doe Defendants."

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to, 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act of 2005 ("CAFA"), because Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff, GARY LOBATON, is a citizen of a different state than Defendants, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. This Court also has subject matter jurisdiction because this matter presents a federal question.

13. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over the Defendants because they conduct substantial business in the State of Illinois, have sufficient minimum contacts with the State, and otherwise avail themselves of the markets in this State, through promotion, sale, marketing, and distribution of their products and services in this State, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. The State of Illinois has a substantial and paramount interest in preventing the practices alleged herein from occurring.

14. Venue properly lies in this district because Defendants, as corporations, are "deemed to reside in any judicial district in which [defendants are] subject to personal jurisdiction;" and because Defendants conduct substantial business in this judicial district.

## FACTUAL BACKGROUND

15. CARNIVAL CORPORATION, per its website, is the largest vacation company in the world. Its portfolio of leading cruise bands includes Carnival Cruise Lines, Holland America Line, Princess Cruises and Seabourn in North America.

16. Defendants attract more than 8.5 million guests annually.

17. Carnival Corporation & plc is the parent company of Costa Cruises and its subsidiary, Costa Crociere S.p.A..

18. On January 13, 2012, Costa Cruises' vessel, the Costa Concordia, departed from Civitavecchia, Italy with approximately 3,200 passengers and 1,000 crew members on a seven-day voyage.

19. Costa Concordia was sailing on a Mediterranean cruise from Civitavecchia with scheduled calls at Savona, Italy; Marseille, France; Barcelona, Spain; Palma de Mallorca; Cagliari and Palermo, Italy.

20. At approximately 10:00pm CET, Costa Concordia struck a rock off the coast of Isola del Giglio, tearing a gash in its hull which let water pour into the engine rooms causing significant damage to the vessel which caused it to capsize.

21. Costa Concordia's Captain, Francesco Schettino, delayed the order to abandon ship and deploy the lifeboats.

22. Captain Schettino, instead of being the last man to leave the vessel and using all reasonable efforts to assure that all passengers and crew members are evacuated to safety, breached his duty as the master of his vessel, and abandoned his ship in the first available opportunity he had.

23. Based on a recording of a telephone conversation between the captain and the port authority, Captain Schettino was ordered by the coastguard to return to the stricken vessel after he claimed that the evacuation was almost complete when it had scarcely begun.

24. According to reports, Captain Schettino's decision to sail close to Isola del Giglio was attributed by the captain to Defendants' management in putting him under intense pressure to sail the cruise ship close to the island in order to present a spectacle to Costa Concordia's passengers.

25. During a telephone conversation with his friend in the hours after he was arrested, Captain Schettino said: "Management was always saying 'pass by there, pass by there.' Someone else in my position might not have been so amenable to pass so close but they busted my balls, pass by there, pass by there, and now I'm paying for it."

26. Captain Schettino attributed his action to the cruise company encouraging the practice of sailing close to the island because it was good "publicity" and went down well with passengers in the increasingly competitive cruise ship business.

27. Due to Captain Schettino's cowardly and reckless action and Defendants' negligent practice, 16 people are dead and 16 more remain missing and over 4,000 people have suffered damages and continue to suffer damages.

28. As a result of Defendants' conduct (including their acts of concealment), Plaintiffs have suffered and continue to suffer damages.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class consisting of:

> (a) All persons who were registered or unregistered and purchased a ticket to be aboard the Costa Concordia at all times relevant to this complaint.
>
> (b) All persons who were employed as crew members and were aboard the Costa Concordia at all times relevant to this complaint.

30. Specifically excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, successors, subsidiaries and/or assigns of Defendants and any Judge assigned to this action, and her or his immediate family. Plaintiff reserves the right to modify the Class definition as discovery and/or further investigation so warrant.

31. This action has been brought and may properly be maintained as a class action as Plaintiff and the Class satisfy all requirements for maintaining a class action.

32. The number of members in the Class is so numerous as to render joinder impracticable. Upon information and belief, there are approximately more than 4,200 people who were aboard the Costa Concordia on January 13, 2012. As such, there is, at a minimum, 4,200 members of the Class. Upon information and belief, the precise size (and identity and contact information) of the Class can be readily determined from documents and records maintained by the Defendants.

33. There are questions of law and fact common to the Class that predominate over any individual issues, including:

> (a) Whether Defendants deviated from international safety standards when operating the cruise ship;
>
> (b) Whether Defendants violated the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea and/or any laws under any applicable international conventions;
>
> (c) Whether Defendants' acted negligently at the time of the incident on January 13, 2012;
>
> (d) Whether Defendants' conduct constituted a breach of contract;
>
> (e) Whether Plaintiffs and members of the Class have all suffered injury or otherwise been damaged as a result of Defendants' wrongful conduct described below:
>
> > (i) whether Defendants had knowledge of the dangerous condition of the cruise ship;
> >
> > (ii) whether Defendants concealed the dangerous condition of the cruise ship to passengers and crew at the time they had notice of the incident; and
> >
> > (iii) whether Defendants misrepresented the existence of safety at the time of the incident.

 (f) Whether Plaintiff and members of the Class have suffered injury in otherwise been damaged as a result of Defendants' conduct;

 (g) Whether Defendants acted negligently;

 (h) Whether Defendants breached the contract with passengers and crew;

 (i) Whether any limits of liability should apply to this case;

 (j) Whether Defendants' have been unjustly enriched by their conduct; and

 (k) Whether the Plaintiff and the Class members are entitled to punitive or exemplary damages and, if so, the nature of such damages.

34. Plaintiff's claim is typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests antagonistic to those of the Class. Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

35. Defendants have acted on grounds generally applicable to all Class members, thereby making final equitable relief with respect to the Class as a whole appropriate with respect to the Defendants.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.

The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### COUNT I
### Violation of the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea

37. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

38. Plaintiff brings this claim on behalf of himself and all others aboard the Costa Concordia on January 13, 2012.

39. Defendants failure to implement safety procedures and its acts of negligence such as failing to perform the safety drill, policy failures that allowed a captain to abandon ship before the passengers, and lack or failure of a warning system to notify the crew that they were off course, were negligent acts that knowingly put the Plaintiff in peril of his life.

40. Defendant acted intentionally or recklessly with knowledge that damage would probably result to Plaintiff.

41. As a direct and proximate result of Defendants' negligent conduct, the Plaintiff suffered and continues to suffer damages. Defendants acted intentionally and hence no limits of liability should be applied in this case.

## COUNT II
### Breach of Contract

42. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

43. Plaintiff brings this claim on behalf of himself and all others aboard the Costa Concordia on January 13, 2012.

44. Defendants offer to sell tickets to Plaintiffs claiming to be a safe cruise liner and offering to take them from Civitavecchia. Plaintiffs accepted Defendants' offer and purchase tickets relying on Defendants express warranty that a trip aboard Defendants' ship was safe and that were going to be taken on a safe manner from Civitavecchia. In addition, Defendants offer jobs aboard the cruise ship claiming to be a safe cruise liner. Plaintiffs accepted offers of employment from the Defendants based on their safety claims.

45. Defendants breached the contract by not providing a safe trip aboard the Costa Concordia and by failing to arrive safely at its final destination.

46. As a direct and proximate result of Defendants' breach, the Plaintiffs suffered and continue to suffer damages.

47. As a direct and proximate result of Defendants' breach, Plaintiff and the Class have been damaged.

48. Plaintiffs sustained substantial and ascertainable losses of money and/or property and other damages, in an amount to be determined at trial.

## COUNT III
### Negligence

49. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

50. Defendants had a duty to Plaintiffs to operate the cruise ship in a safe manner as to avoid causing injury to Plaintiffs. Defendants particularly had a duty to evacuate Plaintiffs on a timely and safe manner as to avoid emotional distress, injury and death to Plaintiffs. In addition, Defendants had a duty to inform Plaintiffs of the dangerous conditions existent in the cruise ship at all times relevant to this complaint. Defendants had a duty to adequately test its warning systems as to avoid dangerous conditions leading to the emotional distress, injury and death of Plaintiffs. Defendants were on notice of the existent danger and failed to evacuate Plaintiffs upon impact as to avoid emotional distress, injury and death to Plaintiffs. Moreover, Defendants had a duty to provide true and accurate information to the Plaintiffs to prevent undue risks arising from the foreseeable acts of Defendants. Defendants had the duty to maintain the Captain aboard the cruise ship as provided by existent laws.

51. Defendants were negligent, and breached the duty owed to the Plaintiff and the Class.

52. As direct and proximate causes of the breach, Plaintiff and Class members have been damaged and continue to suffer damages.

## COUNT IV
**Unjust Enrichment**

53. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

54. Plaintiffs conferred a tangible economic benefit upon Defendants by purchasing tickets for the cruise, and by providing services aboard the cruise ship.

55. Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiffs.

56. Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Defendants' retention of the benefit conferred upon them by Plaintiffs would be unjust and inequitable.

## COUNT V
**Punitive Conduct**

57. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

58. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care and was in reckless disregard for the rights of the Plaintiffs. Defendants' conduct has been outrageous and outside the bounds of decency. Defendants should be punished due their conduct of putting others at risk of serious injury and death in order to make more profit. Plaintiffs hereby request an award of punitive damages to appropriately punish Defendants for their extreme misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A. determine that the claims alleged herein may be maintained as a class action and issue an order certifying the Class as defined above;

B. appoint Plaintiff as the representatives of the Class and his counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, treble and consequential damages to which Plaintiff and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. award reasonable attorneys' fees, costs and expenses; and

F. grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:   January 26, 2012

Respectfully submitted,

**RIBBECK LAW CHARTERED**

By:   /s/Monica R. Kelly
   Attorney for Plaintiff

Manuel von Ribbeck, Esq.
Monica R. Kelly, Esq.
**RIBBECK LAW CHARTERERD**
505 N. Lake Shore Drive
Lake Point Tower
Chicago, Illinois, 60611
Phone  (312) 822-9999
E-mail: monicakelly@ribbecklaw.com
      mervinmateo@ribbecklaw.com
Firm I.D. No.  42698